**In re Doreen Mary GOLDBRONN, Debtor.**

**Ethel B. Schlenkerman, Plaintiff,**

v.

**Doreen Mary Goldbronn, Defendant.**

**Bankruptcy No. 99–16736–8C7. Adversary No. 00–0047.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

April 26, 2001.

Kalju Nekvasil, Stephen Krosschell, Clearwater, Florida, for plaintiff.

Harvey J. Spinowitz, Clearwater, Florida, for defendant.

### MEMORANDUM OF DECISION ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

C. TIMOTHY CORCORAN, III, Bankruptcy Judge.

This adversary proceeding involves a claim of securities fraud. After the debtor/defendant filed her Chapter 7 bankruptcy case, the court modified the automatic stay to permit a National Association of Securities Dealers' Arbitration panel to liquidate the plaintiff's claim against the defendant. The arbitration panel entered an award of $53,374.85. The plaintiff seeks to except this award from the defendant's Chapter 7 discharge.

*I.*

This adversary proceeding is before the court on the parties' cross-motions for summary judgment (Document Nos. 9 and 13). In her motion, the plaintiff seeks to confirm the arbitration award in her favor. In addition, the plaintiff seeks to use the facts as determined by the arbitration panel to estop collaterally the debtor/defendant from denying or disputing those facts for purposes of this dischargeability proceeding. Were the court to accept the plaintiff's collateral estoppel arguments, the court would then use the facts established in the arbitration to determine that the debt established there is excepted from the debtor's discharge pursuant to Sections 523(a)(2)(A), 523(a)(4), and 523(a)(6) of the Bankruptcy Code.

The defendant, on the other hand, urges the court to vacate the award. The defendant contends that the award was made in violation of the Federal Arbitration Act ("FAA"). Alternatively, if the court confirms the award, the defendant opposes the plaintiff's efforts to use the facts established in the arbitration for collateral estoppel purposes. In this regard, the debtor/defendant says that the requirements of collateral estoppel are not satisfied here because the issues presented in the arbitration were vastly different from the issues pending in this adversary proceeding.

The granting of summary judgment is controlled by F.R.B.P. 7056, which adopts F.R.Civ.P. 56. F.R.Civ.P. 56(c) provides that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "There is no genuine issue for trial where the record could not lead a rational trier of fact to find for the non-moving party." *Twiss v. Kury*, 25 F.3d 1551, 1554 (11th Cir.1994). "The party seeking summary judgment bears the burden of demonstrating that no genuine dispute exists as to any material fact in the case." *Id.* The court is required to consider the evidence in the light most favorable to the non-moving party. *Currie v. Cayman Resources Corp.*, 835 F.2d 780, 783 (11th Cir.1988).

## II.

The undisputed facts established in the summary judgment record reveal the following:

This dispute began in 1996 with an investment recommendation that the defendant made to the plaintiff. The defendant, a practicing attorney, had represented the plaintiff with respect to her estate planning since 1993. In 1996, the defendant began to branch out into the securities business.[1]

The defendant recommended that the plaintiff, her long-time estate planning client, invest in a guaranteed investment program. The investment vehicle was to be a promissory note issued by R & W Funding, Inc. ("R & W Funding"). The defendant represented to the plaintiff that R & W Funding was engaged in the environmental remediation business for the State of Florida. The defendant further represented to the plaintiff that the R & W Funding investment was safe and would generate high yields for the plaintiff, repaying the principal with a 12 to 15 percent return within 14 months.

The defendant conducted no investigation of the investment before recommending it to the plaintiff. The defendant also did not provide to the plaintiff an offering memorandum or other written documents that described risks associated with the R & W Funding investment.

Acting upon the defendant's recommendation, the plaintiff purchased a R & W Funding promissory note in the amount of $40,000. She effectuated the purchase by sending a check to the defendant who then transmitted the monies to a broker at Baxter, Banks & Smith, Ltd. The defendant received a $1,600 referral fee from the broker on account of this transaction.

Contrary to the defendant's representations, R & W Funding was engaged in the business of purchasing, rehabilitating, and reselling automobiles rather than environmental remediation. Moreover, the R & W Funding promissory note was an unsecured, high-risk investment that was not registered with the State of Florida. Ultimately, the plaintiff lost money on her investment.

The plaintiff submitted for arbitration to the NASD a complaint for damages against the defendant on December 15, 1998.[2] In her statement of claim, the plaintiff asserted violations of federal securities law, state securities law, and general contract and tort law, including breach of fiduciary duties. The claims relevant to this decision are the claims brought under Sections 517.211(6), 517.301(1)(a)(1), 517.301(1)(a)(2), and 517.301(1)(a)(3), Florida Statutes.[3]

■ The plaintiff sought compensatory and punitive damages, pre-judgment interest, attorney's fees, and costs. The parties signed a uniform arbitration submission agreement, although the defendant reserved all jurisdictional or procedural de-

---

1. As part of that process, she applied for a license to sell securities. The application contained an arbitration clause in which the defendant agreed to arbitrate before the National Association of Securities Dealers, Inc. ("NASD"), any disputes arising from recommendations or sales of securities.

2. The plaintiff also submitted for arbitration with the NASD a separate claim for damages against the broker.

3. The arbitration complaint erroneously identifies Section 517.301(1)(a)(2) as 517.301(2). Section 517.301(2) is a definitional section of the statute. The allegations in the complaint identified with Section 517.301(2) are clearly drawn from the language of Section 517.301(1)(a)(2).

fenses.[4] The final arbitration was scheduled for October 18, 1999.

On October 15, 1999, the defendant filed a petition under Chapter 7 of the Bankruptcy Code. The plaintiff timely filed this adversary proceeding to determine the dischargeability of her claim against the defendant pursuant to Sections 523(a)(2)(A), 523(a)(4), and 523(a)(6) of the Bankruptcy Code. The plaintiff also filed a motion for relief from the automatic stay and to compel arbitration (Main Case Document No. 27). The court granted that motion on March 15, 2000 (Main Case Document No. 32), and modified the stay for the purpose of permitting the plaintiff to liquidate her claim against the debtor/defendant in the arbitration.

The arbitration took place over a two-day period. It was vigorously litigated by the parties. On July 11, 2000, the arbitration panel entered an award in favor of the plaintiff in the amount of $53,374.85, comprised of $40,000 in compensatory damages, $10,695.89 in pre-judgment interest, $2,558.96 in costs, and $120 in reimbursement of the filing fee. The panel further determined that the issue of attorney's fees was to be decided by a court of competent jurisdiction. The panel specifically denied the plaintiff's request for punitive damages.

The arbitration award stated that it was entered "in full and final resolution of the issues submitted for determination." The award contained only one finding of fact: that the defendant "violated the Florida Securities and Investor Protection Act, Sections 517.07 and 517.301, *et seq.*, as alleged in the Statement of Claim." The

award also stated that "the Panel determines that [the defendant's] liability to [the plaintiff], as represented by this Award, constitutes a debt obtained by false pretenses or by a false representation." Finally, the award stated that "[a]ll other requests for relief not specifically addressed herein are denied."

### III.

■■■ The defendant first asks the court to vacate the arbitration award for cause; the plaintiff first asks the court to confirm the award. "Arbitration is an alternative to the court system and limited review is necessary to prevent arbitration from becoming merely an added preliminary step to judicial resolution rather than a true alternative." *Chandra v. Bradstreet*, 727 So.2d 372, 374 (5th DCA Fla. 1999). For this reason, "[a] high degree of conclusiveness attaches to the arbitration award." *Id.* "The [FAA] statute does not allow courts to 'roam unbridled' in their oversight of arbitration awards, but carefully limits judicial intervention to instances where the arbitration has been tainted in specified ways." *Robbins v. Day*, 954 F.2d 679, 683 (11th Cir.1992), *overruled in part on other grounds by First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995).

■■■ The FAA provides four statutory bases to vacate an arbitration award. *Brown v. Rauscher Pierce Refsnes, Inc.*, 994 F.2d 775, 778 (11th Cir.1993). They are:

(1) Where the award was procured by corruption, fraud, or undue means.

---

**4.** The defendant does not directly assert these defenses in this proceeding. The defendant does not dispute that she signed the license application containing the arbitration clause prior to the plaintiff's purchase of the R & W Funding promissory note. "[P]arties may bind themselves to arbitrate disputes by signing a contract that incorporates an arbitration agreement by reference." *Scott v. Prudential Securities, Inc.*, 141 F.3d 1007, 1013 (11th Cir.1998).

(2) Where there was evident partiality or corruption in the arbitrators. . . .

(3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party may have been prejudiced.

(4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made. 9 U.S.C.A. § 10(a).

*Id.* at 779 n. 2.

■ In addition to the four statutory bases for vacating an arbitration award, our circuit recognizes three nonstatutory grounds. "[A] party may challenge an arbitration award without reliance on the FAA if the award is: (1) arbitrary and capricious; (2) in contravention of public policy; or (3) entered in 'manifest disregard of the law.'" *Scott,* 141 F.3d at 1017, *quoting Montes v. Shearson Lehman Brothers, Inc.,* 128 F.3d 1456, 1461–2 (11th Cir.1997).

■ The defendant here asserts that the plaintiff procured the arbitration award through fraud.[5] In support of this assertion, the defendant offers a conclusory affidavit in which she alleges that the plaintiff:

5. The defendant also asserts that the arbitration panel exceeded its powers when it made a finding with respect to liability under Section 523(a)(2)(A) of the Bankruptcy Code that the award constitutes a debt obtained by false pretenses or by a false representation. "[A]n arbitrator exceeds his or her power … when he or she goes beyond the authority granted by the parties or the operative documents and decides an issue not pertinent to the resolution of the issue submitted to arbitration." *Schnurmacher Holding, Inc. v. Noriega,* 542

… testified on June 2, 2000 at said hearing that she never met with me in December of 1996 or in February of 1997; that she did not sign any estate planning documents on February 24, 1997 at my New Port Richey office; that she was never advised by me of the circumstances surrounding the investment error at this meeting and that she never recanted once advised of the error. I testified to the contrary.

The defendant attached to her affidavit documents that the plaintiff signed and defendant notarized on February 24, 1997.

■ To vacate an arbitration award on the basis of fraud, the party asserting fraud "must establish it by clear and convincing evidence, and must show that due diligence could not have resulted in discovery of the fraud prior to arbitration." *Foster v. Turley,* 808 F.2d 38, 42 (10th Cir.1986) (internal citations omitted).

■ Looking at these allegations in the light most favorable to the plaintiff, the court must conclude that there are no genuine issues of material fact and that the plaintiff is entitled to judgment as a matter of law on the defendant's claim of vacatur for reasons of fraud. The very words of the defendant's sworn statement reveal that the issue of conflicting testimony was before the arbitration panel. The arbitration panel resolved this conflict in the testimony in the plaintiff's favor.

So.2d 1327, 1329 (Fla.1989). The court agrees with the defendant on this point. Because the defendant attacks a finding in the award on this ground rather than the award itself, the better place to resolve this issue is in the court's determination of the collateral estoppel effect of the arbitration award. Accordingly, the court presents a comprehensive discussion disposing of that finding in Section IV.A.5. of this decision. For these reasons, the court will not address this point as a basis for vacatur.

Mere conflicting versions of the facts at the arbitration hearing cannot constitute fraud for purposes of vacatur without every arbitration award being vacated for this reason. Virtually all arbitrations—like trials in court—involve conflicting testimony that the trier of fact must resolve. Indeed, had the arbitration panel ruled in favor of the defendant, the plaintiff could make the very same claim of fraud that the defendant makes now. In fact, the parties gave conflicting testimony. The arbitration panel chose to believe one over the other. Nothing approaching fraud is represented by this rather routine occurrence.

Moreover, nothing in the affidavit raises any issue of fraud beyond a mere conflict in the testimony. The objective evidence attached to the affidavit, accepted as true for purposes of this summary judgment motion, establishes only that the plaintiff met with the defendant for the purpose of signing documents on February 24, 1997, contrary to the plaintiff's recollection.

In addition, it is clear that the defendant had this evidence—her own recollection and version of the facts—prior to the arbitration. This evidence is not something that has come to light only after the arbitration was concluded and that could not have been known or discovered beforehand. In *Scott*, the plaintiff sought to vacate an arbitration award entered against him on the basis of fraud. *Scott*, 141 F.3d at 1015 n. 16. In summarily dismissing his claim of fraud, the court wrote that, "where the fraud or undue means is not only discoverable, but discovered and brought to the attention of the arbitrators a disappointed party will not be given a second bite at the apple." *Id.* Similarly, the defendant here was in possession of the evidence that refuted the plaintiff's testimony and could have made or did make that evidence available to the arbitration panel.

For these reasons, the court concludes that the fraud complained of by the defendant is not fraud within the meaning of Section 10(a) of the FAA and constitutes no basis to vacate the arbitration award as procured by fraud.

Alternatively, the defendant argues that the arbitration award is arbitrary and capricious. "For an award to be vacated as arbitrary and capricious, the Panel's award must contain more than an error of law or interpretation. Rather, there must be *no ground* for the Panel's decision." *Brown*, 994 F.2d at 781 (emphasis supplied). In *Brown*, the court rejected the defendant's argument that an arbitration award was arbitrary and capricious because the panel's "interpretation of Florida law was not so palpably faulty that no judge could have applied the law as it did." *Id.* at 782. Stated another way, "[i]f there is 'even a barely colorable justification for the outcome reached,' the court must confirm the arbitration award." *Wilemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103 F.3d 9, 13 (2nd Cir.1997), *quoting Matter of Andros Compania Maritima, S.A. of Kissavos (Marc Rich & Co., A.G.)*, 579 F.2d 691, 704 (2d Cir.1978).

The court first looks to the arbitration award itself to determine if there is a rational basis upon which the arbitrator could have relied. *Brown*, 994 F.2d at 782. "So long as there is a 'proper basis' for the award, the party seeking vacatur is limited to the four narrow bases set forth in the FAA, and may not invoke the non-statutory bases as grounds for vacating the award." *Id.* at 779.

In this case, the arbitration panel found that the defendant violated Sections 517.07 and 517.301, Florida Statutes. The arbitration panel based this decision on the facts as presented by the parties, especial-

ly the plaintiff's version of those facts. This evidence clearly supports the panel's award. Because the award is founded on a clear rational basis, the award was not arbitrary and capricious.

For these reasons, the court concludes that the defendant has failed to establish a dispute of any material fact and the plaintiff is therefore entitled to judgment as a matter of law on the defendant's claim of vacatur of the arbitration award.

■ "If an arbitration award cannot be vacated pursuant to 9 U.S.C. § 10, or modified pursuant to 9 U.S.C. § 11, it must be confirmed pursuant to 9 U.S.C. § 9." *The Denver & Rio Grande Western Railroad Co. v. Union Pacific Railroad Co.*, 868 F.Supp. 1244, 1252 (D.Kan.1994); *Gianelli Money Purchase Plan & Trust v. ADM Investor Services, Inc.*, 146 F.3d 1309, 1313 (11th Cir.1998) [reversing district court's order vacating arbitration award and remanding for confirmation of the award]. The court will therefore deny the defendant's motion for summary judgment and grant in part the plaintiff's motion for summary judgment. Accordingly, the court confirms the arbitration award. The arbitration award constitutes a debt against the debtor in the amounts determined by the arbitration panel.

■ As the prevailing party in the arbitration, the plaintiff is entitled to attorney's fees for services provided in the arbitration as provided by Section 517.211(6), Florida Statutes. The arbitration award provided that the amount of these fees was to be determined by a court of competent jurisdiction. The plaintiff seeks the determination of these fees in this proceeding. Accordingly, the court will consider the issue of attorney's fees at trial.

### IV.

The court must now consider the character of the debt represented by the arbitration award. The plaintiff seeks a determination that the debt is non-dischargeable pursuant to Sections 523(a)(2)(A), 523(a)(4), and 523(a)(6) of the Bankruptcy Code. The plaintiff seeks summary judgment on this issue on the basis of the doctrine of collateral estoppel. This issue will turn on whether the principles of collateral estoppel apply to the facts as found by the arbitration panel.

■ "The doctrine of collateral estoppel or issue preclusion is designed to ensure the finality of factual or legal conclusions reached ... in formulating a final judgment." *P & S X-ray Co. v. Dawes (In re Dawes)*, 1995 WL 461880 *5 (Bankr. N.D.Ill.1995). "Collateral estoppel prohibits litigants from resurrecting factual and legal issues that were litigated and resolved." *Id.*

■ Our court of appeals has established as prerequisites to the application of collateral estoppel three prongs: "(1) the issue at stake must be identical to the one alleged in the prior litigation; (2) the issue must have been actually litigated in the prior litigation; and (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment of that earlier action." *Greenblatt v. Drexel Burnham Lambert, Inc.*, 763 F.2d 1352, 1360 (11th Cir.1985). "In addition, the party against whom the earlier decision is asserted must have had a full and fair opportunity to litigate the issue in the earlier proceeding." *Id.*

■ It is well settled that an arbitration award can have collateral estoppel effect. *Id. See also Pollock v. Marx (In re Marx)*, 171 B.R. 218, 221–22 (Bankr. N.D.Tex.1994) [arbitral findings may be given preclusive effect]. In this case, the arbitration panel did not make specific findings of fact in its award. The panel

instead adopted the plaintiff's statement of the case as the facts establishing the requisite elements of Section 517.301, Florida Statutes.[6] The court may also infer facts for purposes of collateral estoppel if "the finding is necessarily implied from the nature of the claim and award." *Owens v. Miller (In re Miller)*, 240 B.R. 566, 573 (Bankr.W.D.Mo.1999). *See, e.g., O'Brien v. Zangara (In re Zangara)*, 217 B.R. 26, 29 (Bankr.E.D.N.Y.1998) ["[A]bsence of specific factual findings and reasoning is counterbalanced by the fact that the arbitrators have clearly enunciated the statutory basis for the Award."]. Accordingly, the arbitration award here establishes those facts necessary to support a violation under Section 517.301, Florida Statutes.

Section 517.301 provides that:

(1) It is unlawful and a violation of the provisions of this chapter for a person:

(a) In connection with the rendering of any investment advice or in connection with the offer, sale, or purchase of any investment or security . . . directly or indirectly:

1. To employ any device, scheme, or artifice to defraud;

2. To obtain money or property by means of any untrue statement of a material fact or omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

3. To engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon a person.

■ Courts interpreting the statute have held that, to establish a claim under this statute, a party must allege and prove

"(1) a misstatement or omission (2) of a material fact (3) made with scienter (4) upon which the plaintiff relied (5) that proximately caused the plaintiffs' loss." *Gochnauer v. A.G. Edwards & Sons, Inc.*, 810 F.2d 1042, 1046 (11th Cir.1987); *First Union Brokerage v. Milos*, 997 F.2d 835, 844–45 (11th Cir.1993). The case law lacks clarity with respect to the type and degree of culpability, reliance, and loss causation required to establish liability under the state statute because much of the law interpreting this statute has been developed by federal courts while also construing federal securities law and the elements under federal securities law are somewhat different than those under the state statute. *See Waters v. International Precious Metals Corp.*, 172 F.R.D. 479, 498 (S.D.Fla. 1996) [comparing cases].

A. *Is the defendant collaterally estopped in this Section 523(a)(2)(A) proceeding from denying or disputing the facts found in the arbitration award?*

The plaintiff asserts that collateral estoppel is appropriate in this case because the arbitration award conclusively determined all of the factual issues necessary to establish that the debt represented by the arbitration award is non-dischargeable under Section 523(a)(2)(A) of the Bankruptcy Code.

■ Section 523(a)(2)(A) excepts from discharge a debt for money or services that have been obtained by "false pretences, a false representation, or actual fraud. . . ." 11 U.S.C. § 523(a)(2)(A). To prevail under this section the plaintiff must establish that (1) the debtor knowingly or recklessly made a material mis-

---

**6.** The arbitration panel also determined that the securities were unregistered in violation of Section 517.07, Florida Statutes. That finding, however, is not relevant to this motion for summary judgment.

representation; (2) with intent to deceive the creditor; and (3) the creditor justifiably relied on the misrepresentation; (4) to its detriment. *HSSM # 7 Limited Partnership v. Bilzerian (In re Bilzerian),* 100 F.3d 886, 892 (11th Cir.1996).

1. *Was there identity of the issues?*

■ "Examining the identity of issues requires the court to compare the issues determined in the prior action with the issues in question in the present action." *Re v. Dutton (In re Dutton),* 1995 WL 759031 *5 (Bankr.D.Or.1995).

■ In this case, the elements of the Florida securities statute and Section 523(a)(2)(A) appear identical upon superficial review. Although the element of material misrepresentation is clearly the same in both statutes, the case law presents a very different picture with respect to the other three of the four elements of Section 523(a)(2)(A) and the analogous elements of Section 517.301. Thus, the plaintiff has satisfied the first prong of collateral estoppel as to the element of material misrepresentation, but the court must look more closely at the other elements.

■ Courts are markedly different in how they interpret the element of intent or scienter between the two statutes, however similar it appears in the text of the statutes. To establish intent under Section 523(a)(2)(A) of the Bankruptcy Code, the plaintiff must show that the debtor made misrepresentations with "the intention and purpose of deceiving the creditor." *Goldberg, Dickman & Shalita, P.C. v. Shalita (In re Shalita),* 1992 WL 301521 *2 (E.D.Pa.1992); *Bilzerian,* 100 F.3d at 892.

■ In contrast, the plaintiff carries a much lighter burden in establishing intent or scienter under Section 517.301. Early cases suggest that scienter need not be shown at all to establish liability under Section 517.301. *Merrill Lynch, Pierce, Fenner & Smith v. Byrne,* 320 So.2d 436, 440 (3d DCA Fla.1975) ["[T]he clear weight of authority is that scienter is not necessary to recovery."]. In *Silverberg v. Paine, Webber, Jackson & Curtis, Inc.,* 710 F.2d 678, 690 (11th Cir.1983), our court of appeals adopted the *Byrne* position on scienter.

More recently, however, other courts have required a showing of some culpability as a requisite element of Section 517.301. For example, in *First Union Brokerage v. Milos,* 717 F.Supp. 1519, 1523 (S.D.Fla.1989), the court stated that a party complaining of violations of Section 517.301 must allege and prove "... scienter or reckless disregard as to the truth of the communication...." To establish scienter, the plaintiff need only show negligence on the part of the defendant. *Profilet v. Cambridge Financial Corp.,* 231 B.R. 373, 381 (S.D.Fla.1999) ["scienter is satisfied by ... a showing of mere negligence, rather than reckless disregard...."]. *See also Commodity Futures Trading Commission v. American Metals Exchange Corp.,* 775 F.Supp. 767, 786 (D.N.J.1991), *aff'd in part, vacated in part on other grounds,* 991 F.2d 71 (3d Cir.1993) ["Florida law merely requires a plaintiff to prove negligence" to establish scienter under Section 517.301.].

Regardless of whether Section 517.301 is construed as a strict liability statute or to require a showing of negligence, the factual predicate needed to establish intent under the Florida securities statute is clearly less onerous than the predicate required under Section 523(a)(2)(A) of the Bankruptcy Code. *See Miller,* 240 B.R. at 580 ["[N]egligence does not meet the standard for fraud under § 523(a)(2)(A)."].

■ In addition, the court is mindful that questions of intent and motive, when

presented in the context of summary judgment, should be decided with caution. *Hammer v. Slater*, 20 F.3d 1137, 1144 (11th Cir.1994).

In this case, the issue of intent proved by the plaintiff in the arbitration was a substantially lesser kind of intent than the intent required to be proved under Section 523(a)(2)(A). Because these intent issues are not identical, the plaintiff cannot satisfy the first prong of collateral estoppel as to this element.

 The dichotomy between the statutes is even more apparent in the element of loss causation. Under Section 523(a)(2)(A) of the Bankruptcy Code, the plaintiff must show that the loss suffered by the plaintiff was proximately caused by the debtor's misrepresentation. *Shalita*, 1992 WL 301521 at *2.

This is not the case with Section 517.301. Under Section 517.301, proof of loss causation is not required at all. *E.F. Hutton & Co. v. Rousseff*, 537 So.2d 978, 981 (Fla. 1989), *adopted by Rousseff v. E.F. Hutton Co.*, 867 F.2d 1281, 1282 (11th Cir.1989).

Accordingly, the issues of loss causation are not identical, and the plaintiff cannot satisfy the first prong of collateral estoppel as to this element.

 Finally, there is also some divergence between the two statutes with respect to the reliance element. Section 523(a)(2)(A) requires that the plaintiff establish that she justifiably relied on the debtor's misrepresentation. *Field v. Mans*, 516 U.S. 59, 73–76, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995); *City Bank & Trust, Co. v. Vann (In re Vann)*, 67 F.3d 277, 283–84 (11th Cir.1995).

In contrast, the law is especially murky on the issue of what is required to establish reliance under Section 517.301. For example, in *Waters*, 172 F.R.D. at 498, the court held that the plaintiff did not need to establish reliance to prevail under Section 517.301. The court reasoned that, if "loss causation is not an element [under Section 517.301], it logically follows that reliance should not be required, as the two concepts are so closely related." *Id.*

On the other hand, some courts have held that the plaintiff must demonstrate some degree of reliance to prevail under Section 517.301. *See, e.g., Milos*, 997 F.2d at 844 ["To establish a § 517.301 claim, the [plaintiff] had to prove that ... they *justifiably* relied upon" the debtor's misrepresentations.]; *Gochnauer*, 810 F.2d at 1047 ["This Circuit requires '*reasonable* reliance' upon the material misrepresentations ..." to establish liability under Section 517.301.] (emphasis supplied).

The arbitration award here does not contain any information with respect to the standards applied by the arbitration panel in reaching the legal conclusions determined there. Accordingly, the court cannot determine whether the element of reliance established in the arbitration award is identical to the reliance element under Section 523(a)(2)(A). Looking at the issue in the light most favorable to the nonmoving party, here the defendant, the court is unable to conclude that the arbitration panel found reliance and that the kind of reliance it found, if any, was the same reliance required by Section 523(a)(2)(A). Accordingly, the plaintiff has not satisfied the first prong of collateral estoppel as to this element.

In summary, therefore, the court concludes that the plaintiff has satisfied the first prong of collateral estoppel only as to the element of material misrepresentation under Section 523(a)(2)(A) of the Bankruptcy Code. The plaintiff has not established the other elements. Because the first prong of collateral estoppel is not satisfied as to those elements, the court

need not consider whether the other two prongs are satisfied. The court will therefore consider the remaining prongs only as to the element of material misrepresentation.

### 2. *Was the issue actually litigated?*

"In general, an issue is actually litigated when it is properly raised by the pleadings or otherwise, is submitted for determination and is determined." *Dutton,* 1995 WL 759031 at *6. The arbitration took place over two days. Both sides were represented by counsel and vigorously advocated their respective positions. The arbitration panel clearly adjudicated the issue of whether the debtor made a material misrepresentation. The court therefore concludes that the issue of material misrepresentation was actually litigated.

### 3. *Was determination of the issue a critical and necessary part of the arbitration award?*

To assess liability under Section 517.301, the arbitration panel had to determine whether the defendant made a material misrepresentation to the plaintiff. The determination of that issue, therefore, was a critical and necessary part of the arbitration.

### 4. *Did the defendant have a full and fair opportunity to be heard?*

In *Universal Ideas Corp. v. Esty,* 68 Or.App. 276, 681 P.2d 1176, 1179 (1984), the court described the methodology that is used in determining whether there was a full and fair opportunity to be heard:

In order to determine whether the parties received a full and fair opportunity to litigate, we make a particularized examination of the prior action. The investigation involves a policy judgment balancing the interests of an individual litigant against the interests of the administration of justice, and we decide where the balance is to be struck in any given case. If actual unfairness will result, collateral estoppel should not be applied.

"[T]he party against whom estoppel is sought bears the burden of presenting evidence on this issue." *Dutton,* 1995 WL759031 at *8.

In this case, the defendant agreed to arbitrate before the NASD all disputes relating to her recommendations and sales of securities as a condition of obtaining her securities license. The resolution of the issues decided in the arbitration were within the scope of the arbitration clause, and the defendant had fair notice of the forum of decision.

During the arbitration proceeding, the defendant was represented by counsel who zealously advocated her position. Upon the entry of the arbitration award, the defendant had the statutory right to attack the finality of the award on specified grounds. She has fully exercised that right in this proceeding, as discussed in Section III above.

The defendant has presented no evidence sufficient to create an issue of material fact that she lacked a full and fair opportunity to litigate the issues in the arbitration. Accordingly, the court determines that the defendant had a full and fair opportunity to litigate the issue of material misrepresentation in the arbitration.

In summary, it appears that the plaintiff has satisfied each of the prongs required to apply the doctrine of collateral estoppel to the arbitration award to establish the fact that the defendant made a material misrepresentation to the plaintiff and to preclude the debtor/defendant from denying or disputing this element under Sec-

tion 523(a)(2)(A) of the Bankruptcy Code. The parties will need to try the remaining issues involved in the Section 523(a)(2)(A) claim.

### 5. *The defendant's other arguments.*

Despite the fact that the plaintiff has demonstrated collateral estoppel effect for only one of the Section 523(a)(2)(A) elements, she argues that the arbitration award satisfies all the elements citing several cases.[7] These cases, however, are completely consistent with the court's conclusion that she has satisfied only one of the elements of Section 523(a)(2)(A) rather than all.

The plaintiff cites *Zangara*, 217 B.R. at 35, as support for the proposition that an NASD arbitration award assessing liability for violation of the Texas state securities laws can have preclusive effect as to all of the elements in a subsequent Section 523(a)(2)(A) claim. *Zangara* rests on a radically different legal proposition than the one advanced here and thus can be easily distinguished. In *Zangara*, the court determined that the arbitration panel's award of *punitive damages* was sufficient to establish the requirements of collateral estoppel where the state statute required a specific intent to harm, reliance, and loss causation as a factual predicate for an award of punitive damages. *Id.* at 33 ["By awarding ... punitive damages, which are only awarded upon a finding that the [defendant] knowingly made a false representation in connection with the transaction, the arbitrators necessarily made the finding that [the defendant] made false representations upon which [the plaintiff] relied to his detriment."]. In contrast to *Zangara*, the arbitration panel

in this case markedly declined to award the plaintiff punitive damages.

For similar reasons, *Securities & Exchange Commission v. Bilzerian (In re Bilzerian)*, 153 F.3d 1278, 1282 (11th Cir. 1998), is also inapposite to the case here. In that case, the court held that a criminal conviction under federal securities law collaterally estopped the debtor from denying or disputing the elements of Section 523(a)(2)(A) in a dischargeability proceeding filed in the bankruptcy court. The court found that the elements in both statutes were identical because the federal criminal securities law at issue there required that the plaintiff establish intent, justifiable reliance, and loss causation to convict the defendant under the statute. *Id.* See *Gochnauer*, 810 F.2d at 1046 [plaintiff must prove knowing or reckless intent, reliance, and both actual and proximate loss causation to establish liability for a misrepresentation under federal securities law]. Because *Bilzerian* is founded on elements of federal criminal securities law rather than the very different elements of state civil securities law, it is not persuasive on this issue.

■■■■ Alternatively, the plaintiff urges the court to recognize the ruling of the arbitration panel "that [the defendant's] liability to [the plaintiff], as represented by this Award, constitutes a debt obtained by false pretenses or by a false representation" as a finding that establishes the requisite elements of Section 523(a)(2)(A) of the Bankruptcy Code. The court declines to do so.

To the extent that this part of the award purports to be a legal finding, the arbitration panel exceeded its jurisdiction in attempting to make it. The finding was not

---

7. The plaintiff has cited a number of cases that apply collateral estoppel of a prior decision to a dischargeability action brought under Section 523(a)(2)(A). The court will discuss only those cases dealing with securities fraud.

required to be made to determine the issue of state securities law that was before the panel. In addition, Section 523(c) of the Bankruptcy Code gives the bankruptcy court exclusive jurisdiction to determine the dischargeability of this debt based upon the theories urged by the plaintiff here. The arbitration panel's attempt to make this determination, therefore, was without effect.

■ Moreover, to the extent that this part of the award purports to be a factual finding, the court concludes that the finding can do no more than duplicate the arbitration panel's finding that the plaintiff established the factual predicate to determine liability of the defendant under the state securities law. The arbitration panel did not need to make a finding that the debt was "obtained by false pretenses or by a false representation" within the meaning of Section 523(a)(2)(A) to determine the issue of liability for a violation of the state securities law that was before it. Although the arbitration panel would have been required to make this factual finding to assess punitive damages against the defendant, it specifically declined to do so. Thus, in the absence of an award of punitive damages, any finding of fact that establishes intent, reliance, or loss causation as required by Section 523(a)(2)(A) of the Bankruptcy Code, but that is not required to establish liability under Section 517.301, is not critical or necessary to the arbitration panel's award. The court therefore cannot afford this part of the arbitration award conclusive effect here under the doctrine of collateral estoppel.

### 6. *Conclusion.*

For all of these reasons, the court concludes that the plaintiff is entitled to summary judgment on the issue of material misrepresentation under Section 523(a)(2)(A) of the Bankruptcy Code. The defendant is collaterally estopped from denying or disputing that element in this proceeding. The court concludes, however, that the plaintiff has not established a basis to estop collaterally the defendant from denying or disputing on their merits the remaining elements of Section 523(a)(2)(A). Because issues of fact remain with respect to each of these remaining elements, the court cannot grant summary judgment in the plaintiff's favor on those elements.

B. *Is the defendant collaterally estopped in this Section 523(a)(4) proceeding from denying or disputing facts found in the arbitration award?*

■ The plaintiff also asserts that collateral estoppel is appropriate in this case because the arbitration award conclusively determined all of the factual issues necessary to establish that the debt represented by the arbitration award is non-dischargeable under Section 523(a)(4) of the Bankruptcy Code. Section 523(a)(4) excepts from discharge a debt "for fraud or defalcation while acting in a fiduciary capacity...." 11 U.S.C. § 523(a)(4). To prevail under this section "the plaintiff must prove (1) a fiduciary relationship between the plaintiff and the debtor/defendant and (2) the debtor's obligation must arise out of its fraud or defalcation while acting in that capacity." *Koenig v. Grotrian (In re Grotrian)*, 217 B.R. 1017, 1020 (Bankr.N.D.Ind. 1997); *Quaif v. Johnson (In re Quaif)*, 4 F.3d 950, 952 (11th Cir.1993).

### 1. *Was there identity of the issues?*

■ The plaintiff asserted a common law claim for breach of fiduciary duty on the basis that the defendant acted as her broker in the R & W Funding investment. "The law is clear that a broker owes a fiduciary duty of care and loyalty to

a securities investor." *Gochnauer*, 810 F.2d at 1049. "The experience and sophistication of the investor are . . . relevant [in determining] the extent of the fiduciary duty of care in explaining contemplated securities transactions." *Id.*

■ "As used in § 523(a)(4), the term 'fiduciary capacity' has a limited application. It applies only to technical or express trusts or to those imposed by statute, as opposed to those which arise out of equitable considerations or which are implied by law." *Grotrian*, 217 B.R. at 1020. *See, e.g., State of Florida Department of Insurance v. Blackburn (In re Blackburn)*, 209 B.R. 4, 9 (Bankr.M.D.Fla.1997) [holding that corporate officer is not a fiduciary within the meaning of Section 523(a)(4)].

■ The plaintiff alleged in the arbitration a breach of fiduciary duty "implied by law", rather than one arising out of a technical or express trust or one imposed by statute. Accordingly, there is no identity of issues as to the fiduciary relationship element. The plaintiff cannot therefore satisfy this prong of collateral estoppel. In any event, the arbitration panel did not make a finding of liability on the plaintiff's claim of breach of fiduciary duty in her favor.

The element of fraud or defalcation under Section 523(a)(4) is necessarily dependent on the existence of a fiduciary duty. Because the arbitration panel made no finding on the issue of fiduciary duty, the plaintiff similarly cannot establish the first prong of collateral estoppel as to this element.

The plaintiff cannot satisfy the first prong of collateral estoppel as to both elements of Section 523(a)(4) of the Bankruptcy Code. Accordingly, the court need

not consider whether the other two prongs of collateral estoppel are satisfied.

### 2. *Is the duty sufficient?*

■ More importantly, the only fiduciary duty that the plaintiff points to in this proceeding is an "implied in law" duty that is insufficient under Section 523(a)(4). As such, the plaintiff's claim fails as a matter of law. The defendant therefore is entitled to summary judgment in her favor on the Section 523(a)(4) claim.[8]

### C. *Is the defendant collaterally estopped in this Section 523(a)(6) proceeding from denying or disputing the facts found in the arbitration award?*

The plaintiff further asserts that collateral estoppel is appropriate in this case because the arbitration award conclusively determined all of the factual issues necessary to establish that the debt represented by the arbitration award is non-dischargeable under Section 523(a)(6) of the Bankruptcy Code.

■ Section 523(a)(6) excepts from discharge a debt for "willful and malicious injury by the debtor to another entity . . . ." 11 U.S.C. § 523(a)(6). To prevail under this section, the plaintiff must "prove three elements: (1) willful conduct, (2) malice, and (3) causation." *Japra v. Apte (In re Apte)*, 180 B.R. 223, 230 (9th Cir. BAP 1995); *Hope v. Walker (In re Walker)*, 48 F.3d 1161, 1163–64 (11th Cir. 1995). Essentially, the willful and malicious elements together require that the plaintiff show "deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61–63, 118 S.Ct. 974,

---

8. Although the defendant did not ask for this relief, the court may grant summary judgment in favor of the defendant in these circum-

stances on its own motion. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 326, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

140 L.Ed.2d 90 (1998). "Finally, to demonstrate proximate cause, the plaintiff must show that the injury was a necessary product of the harmful act." *Apte,* 180 B.R. at 231.

### 1. *Was there identity of the issues?*

 For the reasons stated in Section IV.A.1. above, the court concludes that the factual issues determined in the arbitration award are not identical to the elements of Section 523(a)(6). Indeed, even in cases in which the court is willing to infer intent from a violation of the federal or state securities laws for collateral estoppel purposes, the court stops short of precluding the issue of willful and malicious injury under Section 523(a)(6). For example, in *Zangara,* the court held that the elements of Section 523(a)(6) were not identical to those in the Texas securities law, a law that is similar to the Florida statute. *Zangara,* 217 B.R. at 35–36.

Similarly, in *Wilbert Life Insurance Co. v. Beckemeyer (In re Beckemeyer),* 222 B.R. 318, 321 (Bankr.W.D.Tenn.1998), the court found that the issues of willful and malicious injury were not identical to the issues determined in the prior action in which the defendant had been found guilty of federal securities fraud.

### 2. *Conclusion.*

For the reasons stated above, the court holds that the plaintiff is not entitled to estop collaterally the defendant from denying or disputing on their merits any of the elements of Section 523(a)(6) of the Bankruptcy Code.

### V.

The court grants the plaintiff's motion for summary judgment in part as follows: The plaintiff is entitled to summary judgment in her favor with respect to confirmation of the arbitration award that liq- uidates the plaintiff's claim against the defendant. The plaintiff is also entitled to summary judgment in her favor as to the element of material misrepresentation under Section 523(a)(2)(A) of the Bankruptcy Code. The defendant is entitled to summary judgment on the plaintiff's claim under Section 523(a)(4) of the Bankruptcy Code. Because issues of material fact exist with respect to the other elements of the plaintiff's claims under Section 523(a)(2)(A) and Section 523(a)(6), these issues require trial. The court will also determine at trial the amount of plaintiff's attorneys fees incurred in the arbitration proceeding. The court will enter a separate order scheduling the proceeding for preliminary pretrial and scheduling conference so the court may schedule the proceeding for trial.