608 So.2d 80 (1992)
Eric APPLEWHITE and Richard Bello, Appellants,
v.
SHEEN FINANCIAL RESOURCES, INC., a Florida Corporation, and Sheen Investment Management Group, Inc., a Florida corporation, Appellees.
No. 91-3146.
District Court of Appeal of Florida, Fourth District.
October 21, 1992.
Rehearing or Clarification Denied December 15, 1992.
*81 Amy D. Shield of Amy D. Shield, P.A., Boca Raton, for appellants.
Howard M. Weiss, Boca Raton, for appellees.
PER CURIAM.
Appellants, defendants below, bring this appeal from an amended final judgment and post-judgment orders concerning an arbitrators' award interpreting non-competition covenants contained in appellants' employment agreements. Appellants argue that the arbitrators exceeded their powers by awarding injunctive relief not contemplated by their employment contracts. They also argue that the trial court erred in failing to modify or correct that portion of the arbitrators' award dealing with costs. We affirm the trial court's amended final judgment and award of attorney's fees and costs.
Appellants, Applewhite and Bello, entered into employment agreements with appellee, Sheen Investment Management Group (SIMG). The pertinent non-competition clause contained in these agreements provided:
7. Property of Accounts  a) Any and all leads obtained through SIMG seminars, mailing lists, prospect files, client files or information, radio shows, television shows, book promotion, or obtained by any other marketing effort of SIMG or Brian J. Sheen are CONFIDENTIAL to and PROPRIETARY of SIMG.
(b) No lead or file as defined in a) above shall be copied, removed from the premises of SIMG or in anyway be made available to any person including the undersigned upon termination. The undersigned agrees that leads and clients remain the property of SIMG permanently regardless of the reason for termination or future employment.
(c) No lead or client information as defined in a) may be solicited by the undersigned for any reason if employment with SIMG is terminated.
(d) For a period of one (1) year after closing of this Agreement, the undersigned will not, within a radius of thirty five (35) miles of 1515 North Federal Highway, Boca Raton, Florida, compete and cause direct harm to Brian J. Sheen individually or to Sheen Investment Management Group by directly or indirectly owning, managing, operating, controlling, being employed by or being connected in any manner with the ownership, operation or control of a securities, life insurance, annuity or personal financial planning business on a retail level or any business similar to or in competition with the type of business conducted by SIMG at the time of closing this Agreement. *82 The provisions of this paragraph shall be enforced by injunctive relief. In the event that a court of competent jurisdiction modifies the scope of this restrictive covenant such modification shall apply, and all other provisions of this agreement shall remain applicable.
The agreements provided for arbitration, further providing that the prevailing party in any dispute would be entitled to attorneys' fees and costs incurred from the time of arbitration through appeal.
In August of 1990, appellants left SIMG and began working at Smith Barney, Harris Upham & Co., Inc, within thirty-five miles of their previous office. Appellants took their personal accounts, as well as those of their wives, relatives, friends, and neighbors with them. Some of SIMG's clients voluntarily transferred their accounts to appellants. SIMG filed a complaint against appellants for breach of the non-competition clauses, seeking injunctive relief pursuant to section 542.33, Florida Statutes, damages for breach of contract, and an accounting of appellants' clients obtained during their employment with SIMG with whom they continued to do business at Smith Barney.
The parties proceeded to arbitration before the American Arbitration Association. The AAA issued its award granting SIMG injunctive relief. Paragraph (b) of the award stated:
(b) That [appellants] shall cease and be permanently enjoined from any further contact with clients of [appellees] as they existed on August 15, 1990; ....
As concerned damages and costs, the award provided:
Further, that the [appellees] do have and recover from [appellants] the sum of ... ($29,034.52), together with costs in the amount of ... ($8,018.51) making a total due to [appellees] from [appellants] of ... ($37,053.02).
The administrative fees and expenses of the [AAA] totaling ... ($3,141.25) and the compensation and expenses of the Arbitrators totaling ... ($3,311.07) shall be borne equally by the Parties. Therefore, [appellants] ERIC APPLEWHITE AND RICHARD BELLO, shall pay to Claimant, SHEEN FINANCIAL RESOURCES, INC. and SHEEN INVESTMENT MANAGEMENT GROUP, INC., the sum of ... ($421.41) for the portion of its share of administrative fees, expenses and compensation still due the Association.
SIMG filed a motion to confirm the arbitrators' award and appellants objected to the perpetual injunction provided for in paragraph (b) of the award, as well as the award of costs to SIMG. Appellants argued that the arbitrators had miscalculated costs, amounting to a duplicative award of costs. The trial court entered an amended final judgment altering paragraph (b) of the arbitrators' award to provide:
3. The [appellants] shall cease and be permanently enjoined from conducting business with clients of [appellees] as those clients existed on August 15, 1990.
(Emphasis added.) The trial court awarded SIMG costs as provided in the arbitrators' award, finding that there was "no evident mistake or miscalculation of any figures from the face of the award."
Appellants' first point on appeal concerns the trial court's confirmation of an amended version of paragraph (b) of the arbitration award. They argue that the arbitrators exceeded their powers, and thus pursuant to section 682.13(1)(c) the trial court should have vacated this portion of the arbitration award. Appellants assert that paragraph 7(c) of the employment agreement (prohibiting appellants' solicitation of any "lead or client information") references paragraph 7(a) for a definition of the terms "lead" and "client information". They contend that paragraph 7(a) limits "leads" to those obtained through SIMG's own efforts. Because the trial court's final judgment enjoins appellants from conducting business with all of SIMG's clients, they argue that the injunction will prohibit them from conducting business with SIMG's clients not obtained through SIMG's efforts. Appellants point to their parents, spouses, relatives, and neighbors as examples of SIMG clients they are enjoined from conducting business with, despite the fact that these clients may not have been obtained through SIMG's efforts, but rather through appellants' efforts.
*83 We note first that the standard of judicial review applicable to challenges of an arbitration award is very limited, with a high degree of conclusiveness attaching to an arbitration award because the parties have chosen to utilize arbitration in order to avoid the expense and delay of litigation. City of West Palm Beach v. Palm Beach County Police Benevolent Ass'n, 387 So.2d 533, 534 (Fla. 4th DCA 1980). Both the trial court and this court are unaware of the discussions and negotiations that were involved in the arbitration process. Further, "the fact that the relief was such that it could not or would not be granted by a court of law or equity is not ground for vacating or refusing to confirm the award." § 682.13(1)(e), Fla. Stat. (1989).
An arbitrator exceeds his or her power under section 682.13(1)(c) when he or she goes beyond the authority granted by the parties or the operative documents and decides an issue not pertinent to the resolution of the issue submitted to arbitration. Schnurmacher Holding, Inc. v. Noriega, 542 So.2d 1327, 1329 (Fla. 1989). We conclude that paragraph (b) of the arbitrators' award, as modified by the court, does not demonstrate such an overstepping of authority or grant of relief not provided for in the employment agreements. The non-competition clause contained in appellants' employment agreements provided that "leads and clients remain the property of SIMG permanently regardless of the reason for termination or future employment." When read in conjunction with paragraphs 7(a) & (c), along with the prohibitions against solicitation of a lead or client information contained therein, injunctive relief enjoining appellants from conducting business with all of SIMG's clients, (as the trial court's modification of the arbitrators' award provides), was within the relief available under the employment agreements.
We also note appellee's concession during oral argument that appellants' relatives were never intended to be included in the group of those with whom appellants may not conduct business. Therefore, we affirm the amended final judgment as to the injunctive relief provided therein, noting that appellants are not prohibited from conducting business with their relatives.
Appellants' second point on appeal concerns the arbitrators' award of costs. Section 682.14(1)(a) provides for modification of an arbitration award when "[t]here is an evident miscalculation of figures... ." No such miscalculation appears from the record or the arbitrators' award in this case. Appellants have failed to demonstrate that the $8,018.51 awarded in costs to SIMG included over $4,000.00 in arbitration costs, as appellants now assert. Further, we decline appellants' invitation to remand to the trial court so that the arbitrators may clarify the method used to arrive at the award of costs. The trial court has already determined that there was no evident miscalculation in the award. Remand from this court for justification of the arbitrators' calculations when no miscalculation is evident would serve only to defeat the high degree of conclusiveness that accompanies review of an arbitration award.
Therefore the amended final judgment affirming the arbitrators' award as modified is affirmed in all respects.
AFFIRMED.
WARNER, POLEN, JJ., and DIMITROULEAS, WILLIAM P., Associate Judge, concur.